607 A.2d 824

BOARD OF COMMISSIONERS OF SOUTH WHITEHALL TOWNSHIP, LEHIGH COUNTY, Pennsylvania, Appellant,

v.

TOLL BROTHERS, INC., Appellee.

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided April 14, 1992.

Reargument Denied June 24, 1992.

Blake Marles, for appellant.

Joseph A. Fitzpatrick, Jr., for appellee.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

The Board of Commissioners of South Whitehall Township (Township) appeals an order of the Court of Common Pleas of Lehigh County (trial court) which directed the Township to issue building permits to Toll Brothers, Inc., on the terms of Township ordinances in effect when final plan approval was granted and to refund to Toll Brothers amounts paid under protest.

On stipulation of counsel, the trial court entered an order directing the case to be heard on briefs and oral argument. The undisputed facts of this case, as recited in the amended complaint of Toll Brothers and admitted in the Township's answer, are as follows:

1. Plaintiff, Toll Brothers, Inc. is a Pennsylvania business corporation and the developer of two tracts of land located in South Whitehall Township, Lehigh County, Pennsylvania, known respectively as the "South Whitehall Estates" ... and "Spring Valley Estates" subdivisions....

. . . .

3. The Spring Valley Estates subdivision, consisting of thirty-one (31) single family home building lots, received final approval from the Defendant Board of Commissioners on or about October 20, 1987. The Plan for Spring Valley Estates was subsequently recorded in the Office of Recorder of Deeds in and for Lehigh County on June 3, 1988.

4. The South Whitehall Estates subdivision, consisting of fifty-three (53) single family home building lots received final approval from the Defendant Board of Commissioners on or about May 17, 1988. The Plan for South Whitehall Estates was subsequently recorded in the Office of the Recorder of Deeds in and for Lehigh County on December 13, 1988.

5. At all times during the Township's consideration of the subdivision plan for South Whitehall Estates and Spring Valley Estates, and at the time said Plan received final approval and was recorded, the relevant Township ordinance required the payment of a $500 water and sewer connection fee with respect to each lot in each of said subdivisions.

6. In accordance with said Ordinance, and subsequent to final plan approval of the Subdivisions, Plaintiff applied for and received nine (9) building permits for construction on nine (9) various lots in the Subdivisions upon the submission of the $500 per lot sewer and water connection fee.

7. Subsequent to the Township's final approval of the Spring Valley Estates and Whitehall Estates Plans and subsequent to the Township's issuance of the aforementioned water and sewer connection permits at the said fee of $500 per dwelling lot, the Board of Commissioners, on December 20, 1988, enacted Ordinance No. 88–444, which purported to increase the water and sewer connection fees required for each lot to $4,000.00....

8. During January 1989 and thereafter, Plaintiff requested building permits to be issued for several lots in the Subdivisions with fees equal to $500.00 per lot for water and sewer connection.

9. Immediately thereafter, Defendant refused to grant the requested building permits unless Plaintiff tendered $4,000.00 per lot for water and sewer connection.

Amended Complaint of Toll Brothers, at 2–3. The complaint sought an order in mandamus commanding the Township to issue to Toll Brothers building permits under the terms of the Township ordinances in effect at the time the Township approved the two subdivisions.[1]

1. Subsequent to filing its amended complaint, but prior to the issuance of an opinion by the trial court, Toll Brothers obtained the building permits by paying, under protest, fees at the rate of $4,000. Trial Court Opinion of April 15, 1991, at 2.

The trial court granted the relief requested, and ordered the Township to refund to Toll Brothers any excess fees paid under protest.[2]

The Township on appeal to this court[3] presents one issue: Whether subsection 508(4)(ii) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508(4)(ii), precludes a municipality from enacting an ordinance that increases water and sewer connection fees with respect to a developer whose subdivision plan has already been approved by the municipality.

 Mandamus is an extraordinary writ which may be utilized to compel performance of a duty which is either purely ministerial or mandatory. *Atland v. Sprenkle,* 57 Pa.Commonwealth Ct. 548, 427 A.2d 275 (1981). To demonstrate entitlement to mandamus relief, a plaintiff must prove a clear entitlement to relief, for which there is a corresponding duty in the defendant, and that there is no other adequate remedy. *Id.*

2. That order stated:
NOW, this 7th day of November, 1990, following the entry of written briefs and oral argument,
*IT IS ORDERED* that the Defendant, Board of Commissioners of South Whitehall Township, Lehigh County, Pennsylvania, shall issue building permits for the lots remaining without such permits of the Plaintiff's (Toll Brothers, Inc.) residential subdivisions known as Spring Valley Estates (consisting of a total of 31 single-family home-bulding [sic] lots, which received Final Plan Approval from the Board on or about October 20, 1987, and the South Whitehall Estates subdivision (consisting of a total of 53 single-family home-building lots, which received Final Plan Approval on or about May 17, 1988) on the terms of the Township Ordinances in effect when such approvals were granted, and in particular such a new permits shall bear a cost of $500.00 per lot for water and sewer connections.
*IT IS FURTHER ORDERED* that the Defendant Board of Commissioners shall refund to Plaintiff any monies paid under protest for water and sewer connection permits already issued for any lots contained within the two above-referenced Subdivisions in excess of $500.00.
Trial Court Order, at 1–2 (footnote omitted).

3. Our scope of review of an order in mandamus is to determine whether the trial court has abused its discretion or committed an error of law. *Malone v. West Marlborough Township Board of Supervisors,* 131 Pa.Commonwealth Ct. 347, 570 A.2d 147 (1990).

■ In this case, Toll Brothers argues that it was entitled to an order in mandamus because subsection 508(4)(ii) of the MPC precludes the Township from raising water and sewer fees of developments of Toll Brothers which were previously approved.

Subsection 508(4)(ii) states:

(ii) When an application for approval of a plat, whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision, or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five years from such approval.

Based on the language of the above subsection, the issue becomes whether an ordinance that increases water and sewer connection fees is an "other governing ordinance" that "affects adversely the right" of Toll Brothers to commence and complete its approved developments.

The Township presents three arguments in support of its appeal. First, the Township argues that its ordinance does not affect "the right" of Toll Brothers to commence and complete its approved developments. The Township argues that "[t]he exercise of that right might not be as desirable or as profitable for Toll Brothers after sewer and water fees are increased, but the right itself is not the least bit infringed." Township's Brief, at 9.

However, the distinction suggested by the Township is tenuous. It seems apparent that at some point the magnitude of a fee increase adopted by a municipality can affect a developer so substantially as to render his "right" to develop meaningless.[4]

4. Though we decline to decide this case on the basis of the magnitude of the fee increase, we note that raising a fee by $3,500 on 75 lots (53 from South Whitehall Estates plus 31 from Spring Valley Estates, less the nine permits already obtained) amounts to a total increase of $262,500. *See* Trial Court Opinion dated April 15, 1991, at 7.

We note that counsel has not cited, nor has our research disclosed, any pertinent case law interpreting subsection 508(4)(ii). However, this court does find instructive the case of *Raum v. Board of Supervisors of Tredyffrin Township,* 29 Pa.Commonwealth Ct. 9, 370 A.2d 777 (1977). In *Raum,* a township approved plans for subdivision of a particular development. Subsequently, the township enacted new zoning and subdivision ordinances which included in their provisions a substantial increase in fee schedules. This court held that landowners whose developments have been approved by a municipality have the right to rely upon the fee schedules in effect at the time of the approval of the plan.

As indicated in conclusion of law number 10 of the *Raum* decision:

10. When a "plat," as defined by the Municipalities Planning Code, has been approved, the land development improvements shown thereon are approved, and the applicant is entitled to proceed in accordance with the approved plans. Sections 107(16) and 508 of the MPC, 53 P.S. §§ 10107(6) and 10508.

While *Raum* did not address specifically the fee increase issue under section 508(4)(ii), a reading of *Raum* leaves no doubt that a municipality may not apply a new ordinance increasing fee schedules to a development for which it has previously granted subdivision approval.

The Township's second argument is that its ordinance is not an "other governing ordinance" as that phrase is used in subsection 508(4)(ii) of the MPC. The use of the word "governing" before the word "ordinance" indicates that subsection 508(4)(ii) does not apply to every ordinance enacted by a municipality. However, the Township argues additionally that the phrase "other governing ordinance" should be limited to "those ordinances which 'govern' the plan, the terms of plan approval, or the right to develop as shown on the plan." Township's Brief, at 10.

Under the Township's interpretation of the phrase "other governing ordinance," an "other governing ordinance" would be limited to, in the words of subsection 508(4)(ii), a

"zoning [or] subdivision" ordinance. The Township has not provided this court with an example of an ordinance that would be an "other governing ordinance" under its interpretation that was not at the same time a "zoning [or] subdivision" ordinance.[5]

In effect, because the Township's proposed interpretation of "other governing ordinance" would consist of changes and amendments to ordinances or the plan which are already expressly contemplated by subsection 508(4)(ii), its interpretation would read the "other governing ordinance" provision out of that subsection. Such an interpretation is inconsistent with the rule of statutory construction that all provisions of a statute are to be given meaning. *See* Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a).

The Township argues finally that the result which follows from the trial court's ruling will lead to unreasonable consequences not intended by our General Assembly. Such consequences include, argues the Township, the inability of municipalities to pass ordinances that: (1) increase property and other taxes; (2) increase sewer and water rental rates; (3) amend the zoning ordinance with respect to neighboring properties in a way that will "affect" an approved development; and (4) alter police, building, or fire codes for legitimate public safety reasons.

The facts of this case involve an ordinance increasing certain fees that the developer is required to pay as a

5. The Township does argue in its reply brief that an ordinance amending its official map and a building code ordinance that impacts upon the development as shown on the plan are "other governing ordinance[s]" that are not "zoning or subdivision" ordinances. Township Reply Brief, at 4–5. However, even when presenting these examples, the Township would limit "other governing ordinance[s]" to those that affect the right to develop "in accordance with *the plans* approved under [the Township's subdivision] procedures." Township's Reply Brief, at 5. However, subsection 508(4)(ii) already expressly precludes a "subsequent change or amendment in the … *plan* … [which] adversely affects the right" to develop. Even given these examples, the Township's suggested interpretation of "other governing ordinance" would thus cover a change or amendment already expressly covered under the terms of that subsection.

precondition to development of the subdivision. Such an increase, in the words of subsection 508(4)(ii), clearly "affect[s] adversely" the right of an applicant (here, Toll Brothers) to commence and complete the approved development. We decline to speculate about hypothetical scenarios not before us.

Accordingly, we affirm.

## ORDER

AND NOW, April 14, 1992, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.

SILVESTRI, Senior Judge, dissenting.

The majority correctly construed the issue for our determination as being whether Ordinance No. 88–444, which increased the water and sewer connections fees, is an "other governing ordinance" as that phrase is used in subsection 508(4)(ii) of the MPC, 53 P.S. § 10508(4)(ii). The majority concluded that Ordinance No. 88–444 is an "other governing ordinance" and precluded the Township from applying the amended fee schedule to Toll Brothers for a period of five years from the subdivision approval. I disagree with the majority's conclusion and therefore I respectfully dissent.

The Township suggests that "other governing ordinance" does not encompass Ordinance No. 88–444 and only applies to ordinances which "govern" the plan, the terms of the plan approval, or the right to develop as shown on the plan. The majority concluded that the Township's interpretation would read the "other governing ordinance" provision out of the subsection since it involves changes already expressly contemplated by subsection 508(4)(ii). However, the changes affected by Ordinance No. 88–444, namely, changes in water and sewer connection fees, were not changes contemplated by subsection 508(4)(ii). The majority overlooks the express language of the statute which provides:

(ii) When an application for approval of a plat, whether preliminary or final, has been approved without condi-

tions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision, or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development *in accordance with the terms of such approval* within five years from such approval.

53 P.S. § 10508(4)(ii) (emphasis added).

In order for subsection 508(4)(ii) to be applicable, the "other governing ordinance" must adversely affect the right of Toll Brothers to commence and complete any aspect of the approved development in accordance with the terms of such approval. Water and sewer connection fees are not terms of subdivision approval.

Toll Brothers does not question the Township's authority to impose water and sewage connection fees; rather Toll Brothers merely challenges the Township's application of the new fee schedule subsequent to it already having gained subdivision approval. It is abundantly clear that approval of Toll Brothers' subdivision plan was in no way related to the level of fees assessed for water and sewer connection. While the issuance of the building permits is contingent upon payment of the connection fees, an ordinance which establishes such fees is not an "other governing ordinance" because it does not determine whether a subdivision plan may or may not be approved.

Additionally, Section 306(B)(t) of the Municipality Authorities Act of 1945,[1] 53 P.S. § 306(B)(t), which was in effect when Toll Brothers sought the building permits in question, granted to municipal authorities the power "[t]o charge a tapping fee whenever the owner of any property connects such property with a sewer system or water main...." The General Assembly later amended Section 306(B)(t) to also provide that "[s]uch fees shall be based upon the duly adopted fee schedule *at the time of payment* and shall be payable at the time of the application for connection...."

1. Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§ 301–401.

53 P.S. § 306(B)(t) (emphasis added).[2] Accordingly, the water and sewer connection fees to be imposed by authorities are those which are in effect on the date of application and payment.

The General Assembly enacted Section 507–A of the MPC,[3] 53 P.S. § 10507–A, which provided that the provisions which govern water and sewer tap in fees for authorities, are also applicable to municipalities charging similar fees. Accordingly, as of June 17, 1991, the effective date of the amended Section 306(B)(t), the water and sewer connections fees to be imposed by a municipality are those which are in effect on the date of the application and payment.

While it is not disputed that Toll Brothers made application for the building permits in question before the effective date of the aforementioned amendments, the actions of the General Assembly in enacting such amendments, reinforces our conclusion that ordinances governing water and sewer connections fees are not "other governing ordinances" subject to the prohibitions of subsection 508(4)(ii). Accordingly, I would reverse the order of the Court of Common Pleas of Lehigh County.

**2.** *As amended,* December 19, 1990, P.L. 1227, § 1, effective in 180 days.

**3.** Act of December 19, 1990, P.L. 1227, § 1, effective immediately.